IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MARK ONE ELECTRIC CO. INC., and SK DESIGN GROUP, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 4:20-cv-00790-HFS |
| v. | ) ) | |
| CITY OF KANSAS CITY, MISSOURI and PHILLIP YELDER, | ) ) ) ) | |
| Defendants. | | |

Memorandum and Order

A preliminary injunction is sought by two prominent local subcontractors who have been entitled to affirmative action certificates. They were deprived of certificates on October 1, 2020, because they failed to qualify for an owner's personal net worth limitation, recently imposed by Kansas City. The cap on affirmative action entitlement was imposed pursuant to a consultants' recommendation which was part of the conclusions of a restudy of the program in 2016. The recommendation was not specifically founded on

1

local conditions but was favored by the consultants as one safeguard against legal challenges against affirmative action programs.[1]

A temporary restraining order was denied in early October, 2020 (Doc. 15), primarily on grounds of plaintiffs' unlikelihood of success which is a required factor to be considered. Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981). The issue has resurfaced for more thorough consideration at this time; but for reasons stated below I reach the same conclusion.

Plaintiffs Mark One Electric Co. and SK Design Group have been entitled to preference respectively as women-owned and minority owned electrical and engineering businesses which have been notably successful for some decades. Mark One is quite ubiquitous, and SK Design Group has apparently gained a considerable reputation in the business community. Adoption of the recommended personal net worth cap on certificates was delayed for several years and was contested

---

[1] There is in fact a legal challenge to the whole program pending before a colleague and being defended by the City in part by reliance on the "small business" justification. *Staco Electric v. City of Kansas City, Mo*., 20-00165-DGK.

2

before the City Council some months before the effective date in October, 2020. Litigation was filed at the last minute. Plaintiffs contend the personal net worth limitation on ownership cannot be constitutionally justified because it has not been "narrowly tailored," does not survive strict scrutiny, disregards continuing discrimination based on gender and racial /national origin bias, even against financially successful persons, and that in any event there are grave financial dangers for plaintiffs during litigation that require protection until the merits have been fully litigated. Plaintiffs acknowledge that their claims are unusual, but contend that this is "a case of first impression."

The City cites several cases on the constitutional merits, all favoring its position, and contends the recommendation supporting the cap is sufficient justification for the legislation, that the assertion of serious financial dangers during litigation is conclusory and inadequately unsupported, and that the last-minute litigation does not deserve relief. My review favoring defendants additionally questions the contention that strict scrutiny review is appropriate in evaluating a

common-place legislative boost to "small business," as defined by legislators. The dividing line chosen between sectors of the same protectable classes probably raises no constitutional suspicion.

## A. The Merits.

The basic complaint here, against legislation withholding benefits from financially successfully persons and businesses, while assisting "small business" enterprises, has been uniformly rejected as a legal issue. When equal protection language, relied on by plaintiffs here, was activated, the Court applied that concept to federal as well as State legislation even though such language is not literally applicable to the federal government. Bolling v. Sharpe, 347 U.S. 497 (1954). The Court stated it would be "unthinkable" to have materially different standards of "fairness" between federal and local programs, as plaintiffs suggest should occur here. As further discussed, the personal net worth line drawn here between those entitled to favorable certificates and those denied such certificates is commonly used federally and frequently by the states. Using a personal net worth cap on benefits creates neither

4

literally nor intentionally a "suspect class" form of discrimination, but is a routine aspect of legislation that burdens the more prosperous or deprives them of benefits. Judicial notice may be taken of the current Stimulus legislation which cuts off certain benefits at the $75,000 income level for individuals.

When a temporary restraining order was denied in this case in October, 2020, reliance was placed on the most pertinent case sustaining a federal affirmative action exclusion of prosperous persons (and companies) who would otherwise qualify for a class suffering ethnic origin or racial discrimination (or disadvantage). <u>Adarand Constructors, Inc. v. Slater</u>, 228 F.2d 1147 (10th Cir. 2000).

Even if a compelling reason were needed for the cap, such a reason was offered here. The 2016 reevaluation of the program resulted in the consultants' recommendation that the City "Adopt a personal net worth test along the lines of the USDOT DBE program requirements. This narrow tailoring measure has been critical to the unanimous judicial holdings that the program meets strict constitutional scrutiny." Doc 5-1, page 129. As predicted, the complaint in *Staco* early last year did assert

5

that the City's program was not narrowly tailored because it did not at that time have the personal net worth limitation. With the limitation now in place, it is no longer subject to the objection voiced by those who are claiming a constitutional violation in *Staco*.

I believe both parties and the consultants may have confused an issue here with one that does require "strict scrutiny" analysis. In determining who should be included in a protectible class great care is needed not to be too inclusive. City of Richmond v. J. A. Croson Co., 488 U.S. 469 (1989). But assuming sound class qualification, as is not questioned here, simply dividing the class into a group needing a particular remedy and those deemed ineligible is a different question. Even plaintiffs do not question the federal "small business" classification requirement, which also has some exclusionary effect, although one they can live with ($16.5 million for the businesses, as against $1.32 million for the personal net worth limit, 13 C.F.R 121.201 and 49 C.F.R. 26.67). Both limitations simply split the group in a manner that, however politically debatable, is not judicially controversial, and certainly not exposed to strict scrutiny.

The most fully reasoned case supporting the City's exclusion of benefits from plaintiffs (by dividing the protected class into groups deemed most in need of relief from groups deemed less needy) is <u>Jana-Rock Const. Inc. v. New York State Board of Econ. Dev.</u>, 438 F.3d 195 (2d Cir. 2006). Like this case, it was a challenge to allegedly underinclusive remedial measures by a party seeking to force itself into the protected group. The Second Circuit acknowledged a right to go to court to seek inclusion in the protected class but found the exclusion permissible, and not subject to strict scrutiny.

The plaintiff in <u>Jana-Rock</u> sought to be included in an affirmative action program covering, inter alia, Hispanics based on parental nativity in Spain. New York, however, had defined the disadvantaged class as being limited to those with Latin American ancestry. While the Circuit noted that creation of an ethnic-based class needed narrow tailoring and was subject to strict scrutiny, the State's action in splitting the class as more broadly defined and including only those deemed more needy did not require using strict scrutiny twice. <u>Jana-Rock</u>, at 200. Only a rational basis was needed in defining Hispanics to include only Latin

7

Americans—thus separating beneficiaries from those excluded from benefits. This ruling (rather more controversial than this case – because dealing with ethnicity rather than financial prosperity) fully supports the City's separating out companies with wealthy ownership as being less in need of affirmative action assistance.

Plaintiffs' contention that women and those with atypical ethnic origins in Kansas City do sometimes suffer from status discrimination is of course commonly understood and is accepted as true, but it remains a legislative choice (not subject to strict scrutiny) to set outward bounds on relief. As defendants' brief notes, Oprah Winfrey would have no constitutional right to affirmative action benefits if there was a legislative decision (as here and in <u>Slater</u>) to exclude the wealthy.

But even if a compelling reason were required to exclude plaintiffs from coverage, they have not impeached or quarreled with the reason suggested by the consultants. At this stage of the proceedings I again conclude the plaintiffs have very unlikely prospects of success on the merits. <u>Dataphase Systems, Inc. v. C L Systems, Inc.</u>, 640 F.2d, at 112-13. Perhaps the current prospects of ultimate success on the merits may

still be termed quite modest or rather minimal, subject of course to further reconsideration before final judgment.

## B. Harm from Denial & the Public Interest.

Plaintiffs offer brief declarations signed by their officials that reflect considerable worry, opinions or guesses that past sources of business they had when possessing certificates would be totally lost in the future, and that some employees would be rendered jobless. Docs. 25-3 and 4. The SK Design Group's past projects generally have "an MBE participation goal." Doc. 25-3, page 2. Over $5 million in 2019 earnings were "due to" the certificate. The clients "require" MBE participation on their projects. SK Design Group "will almost certainly lose these clients." Communication from prime contractors on projects being pursued seek "confirmation" of MBE status. A loss of business opportunities provided by the certification will prevent SK Design Group from keeping "all" of its 21 employees employed. Mark One's revenues would be "significantly and negatively" impacted by loss of certification. Doc. 25-4, page 1. Mark One has received client communication "expressing confusion" and "questioning" Mark One's

9

status, "as they consider the company for existing and future projects." At argument on December 16, 2020, counsel did not, however, suggest any subcontract cancellations after the loss of certificates. I thus assume the loss of certification did not interfere with contracts already awarded. There was no claim or proof of contractor "warnings" about future subcontracting during litigation, and no new information has been tendered for subsequent weeks. We thus have only fears and opinions held by the plaintiff subcontractors. The deciding parties are not plaintiffs but would be contractors, although defendant Yelder, Director of the Human Relations Department, would have an unspecified role in enforcing the program. Plaintiffs have filed nothing from the deciding parties, and offer no hearsay warning to plaintiffs about future dealings on projects that may shortly be let. Plaintiffs of course have the burden of proof and persuasion at this time.

The City responds to the claim of anticipated harm by advising that the certificates issued to subcontractors are only pertinent to any contractor achievement of affirmative action "goals" that are set for an entire contract, which are "flexible" and determined on a "contract-by-

contract basis."  "Any combination" of certified subcontractors can be used to satisfy goals "if such goals are set for contracts."  Doc 29, page 20, with ordinance citations.  Plaintiffs' future loss of business contentions are thus "speculative," according to the City.

While I acknowledge there may be cause for worry by plaintiffs, the absence of reported problems in existing contracts or in new contracting during more than three months since plaintiffs lost their certificates does indicate that the expressed concerns during litigation are highly speculative and the declarations filed are too conclusory to make confident predictions for the ensuing months.  "Flexible" City goals during litigation may avoid dire consequences favoring a preliminary injunction. Plaintiffs are free to present new information to this court or an appellate court if some dramatic loss of opportunity occurs during litigation.

Defendants note that a threat of irreparable harm during litigation must be "certain and great and of such imminence that there is a clear and present need for equitable relief."  <u>Roudachevski v. All-American Care Ctrs., Inc.</u>, 648 F.3d 701, 706 (8th Cir. 2011). The record does not

support a finding of a threat of irreparable harm at this time in the context of relative injuries to the parties and the public. Dataphase, at 113.

A related and quite significant factor is the public interest. A purpose of the personal net worth limitation is to enhance business opportunities for certificate holders who are deemed to be more in need of help. Thus, if there are some business losses during litigation because of the new certificate requirement, the gains of other certificate holders should probably be considered as balancing out the losses plaintiffs may suffer. The public interest, a required consideration under Dataphase, as intended by the City Council, would be served by increased opportunities for eligible but less well-heeled potential subcontractors. Such a transfer of new business should probably not be interfered with by judges, who should avoid impeding the results of lawful public policy.

To be realistic, I should probably note unexplored possibilities of corporate reorganization or merger, which might avoid the impact of the

certification change, although that might not advance the objective of the changed certification requirement.

In a case where the merits, as presently developed, so strongly favor defendants, the plaintiffs' motion for a preliminary injunction, (Doc. 24) should be and is hereby DENIED.

                              s/ HOWARD F. SACHS

                              **HOWARD F. SACHS**
                              UNITED STATES DISTRICT JUDGE

January 11, 2021

Kansas City, Missouri