IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MARK ONE ELECTRIC CO. )
INC., SK DESIGN GROUP, )
INC., )
 )
Plaintiffs, )
 )
    v. ) Case No. 20-00790-CV-W-HFS
CITY OF KANSAS CITY, MO.,)
ANDREA DORCH, )
 )
 )
Defendants. )

**MEMORANDUM AND ORDER**

    Before the court is the defendant City's motion to dismiss. Plaintiffs are two prominent Kansas City businesses and former certificate holders from the City, which recognized them as entitled to affirmative action preference in contracting as organizations owned by women or minorities. The harm complained of is that they lost their certificates on October 1, 2020, when the City Council put into effect a 2016 recommendation of

1

consultants that a personal net worth cap be imposed. The recommendation was made to narrow the coverage of the program, which was advocated as a method of making it less vulnerable to legal challenge. (Doc 36, Amended Complaint, Para. 16. See also Doc. 5-1, page 129). The delay of several years in implementing the recommendation resulted in recently closed litigation before Judge Kays (the *Staco* case)[1], where it was claimed that wealthy/prosperous organizations like plaintiffs' were unjustifiably included, making the program over-inclusive and harming other uncertified competitors.

While the exclusion of the two plaintiffs in October apparently helped close out the litigation before Judge Kays, it resulted in this litigation, claiming these plaintiffs have now been wrongfully excluded. The Amended Complaint, which I accept as factually true on this motion to dismiss, alleges that the net worth cap was "neither supported by quantitative nor qualitative analysis" (Doc 36, Para. 16). Plaintiffs claim constitutional violations and seek strict scrutiny of the imposition of the personal net worth limitation, asserting that the program is now under-inclusive of

---

[1] Case No. 20-00165-DGK, dismissed pursuant to the parties' Joint Stipulation of Dismissal. (Doc. 69).

2

eligible parties who have a vested right to coverage. A request for a temporary restraining order against decertification was denied, after limited argument and briefing. A request for a preliminary injunction was similarly denied, after further study, and largely on the same theory, that the claims lack legal merit. (Doc. 33; <u>Mark One Electric Co., Inc. v. City of Kansas City, Missouri</u>, 2021 WL 83463 (W.D.Mo.)).

    Plaintiffs center their resistance to the dismissal motion on a contention that, while the claims made are novel, and lacking in legal support that deals with facts in any way analogous to this case, there is a need for unspecified discovery before ruling because there are factual contentions in dispute. Relying on the allegations of the amended complaint as true, however, though not accepting legal contentions, there is no apparent need for discovery. I accept the background facts alleged and assume the personal net worth proposal was made simply on the published recommendation of the consultants, "without quantitative or qualitative analysis", with the caps adopted from figures used elsewhere or simply proposed in the legislative process. Special aspects, such as inclusion of assets in trust, are assumed arguendo, in favor of plaintiffs, to be based on

no more than unexplained recommendations of the consultants or attorneys to "close loopholes." [2]

Whether the net worth disqualifier from the program violates plaintiffs' constitutional rights calls for a legal ruling. The motion to dismiss sufficiently offers that opportunity and gets us again to the legal merits, this time for a definitive call. After deliberation and reconsideration of the case law, I reach the result that I did before.

Now reaching and rejecting the legal merits of plaintiffs' amended complaint, there is little reason to reword the analysis offered in January, when a preliminary injunction was denied. Mark One, 2021 WL 83463, *2 & *3. For convenience the rationale is reproduced here:

" **A. THE MERITS**,

The basic complaint here, against legislation withholding benefits from financially successfully persons and businesses, while assisting "small

---

[2] In Count III there is an unrelated claim about "arbitrary" or unauthorized aspects of the trust asset inclusion. This is not part of plaintiffs' equal protection constitutional challenge. Plaintiffs ask permissive consideration of Count III under supplemental jurisdiction authority. Because the federal claims are being dismissed Count III will be dismissed without prejudice.

business" enterprises, has been uniformly rejected as a legal issue. When equal protection language, relied on by plaintiffs here, was activated, the Court applied that concept to federal as well as State legislation even though such language is not literally applicable to the federal government. <u>Bolling v. Sharpe, 347 U.S. 497 (1954)</u>. The Court stated it would be "unthinkable" to have materially different standards of "fairness" between federal and local programs, as plaintiffs suggest should occur here. As further discussed, the personal net worth line drawn here between those entitled to favorable certificates and those denied such certificates is commonly used federally and frequently by the states. Using a personal net worth cap on benefits creates neither literally nor intentionally a "suspect class" form of discrimination, but is a routine aspect of legislation that burdens the more prosperous or deprives them of benefits. Judicial notice may be taken of the current Stimulus legislation which cuts off certain benefits at the $75,000 income level for individuals.

When a temporary restraining order was denied in this case in October, 2020, reliance was placed on the most pertinent case sustaining a federal affirmative action exclusion of prosperous persons (and companies) who would otherwise qualify for a class suffering ethnic origin or racial

5

discrimination (or disadvantage). Adarand Constructors, Inc. v. Slater, 228 F.2d 1147 (10th Cir. 2000).

Even if a compelling reason were needed for the cap, such a reason was offered here. The 2016 reevaluation of the program resulted in the consultants' recommendation that the City "Adopt a personal net worth test along the lines of the USDOT DBE program requirements. This narrow tailoring measure has been critical to the unanimous judicial holdings that the program meets strict constitutional scrutiny." (Doc 5-1, page 129). As predicted, the complaint in *Staco* early last year did assert that the City's program was not narrowly tailored because it did not at that time have the personal net worth limitation. With the limitation now in place, it is no longer subject to the objection voiced by those who are claiming a constitutional violation in *Staco.*

I believe both parties and the consultants may have confused an issue here with one that does require "strict scrutiny" analysis. In determining who should be included in a protectible class great care is needed not to be too inclusive. City of Richmond v. J. A. Croson Co., 488 U.S. 469 (1989). But assuming sound class qualification, as is not questioned here, simply dividing the class into a group needing a particular

6

remedy and those deemed ineligible is a different question. Even plaintiffs do not question the federal "small business" classification requirement, which also has some exclusionary effect, although one they can live with ($16.5 million for the businesses, as against $1.32 million for the personal net worth limit, 13 C.F.R 121.201 and 49 C.F.R. 26.67). Both limitations simply split the group in a manner that, however politically debatable, is not judicially controversial, and certainly not exposed to strict scrutiny.

The most fully reasoned case supporting the City's exclusion of benefits from plaintiffs (by dividing the protected class into groups deemed most in need of relief from groups deemed less needy) is Jana-Rock Const. Inc. v. New York State Board of Econ. Dev., 438 F.3d 195 (2d Cir. 2006). Like this case, it was a challenge to allegedly underinclusive remedial measures by a party seeking to force itself into the protected group. The Second Circuit acknowledged a right to go to court to seek inclusion in the protected class but found the exclusion permissible, and not subject to strict scrutiny.

The plaintiff in Jana-Rock sought to be included in an affirmative action program covering, inter alia, Hispanics based on parental nativity in Spain. New York, however, had defined the disadvantaged class as being

7

limited to those with Latin American ancestry. While the Circuit noted that creation of an ethnic-based class needed narrow tailoring and was subject to strict scrutiny, the State's action in splitting the class as more broadly defined and including only those deemed more needy did not require using strict scrutiny twice. Jana-Rock, at 200. Only a rational basis was needed in defining Hispanics to include only Latin Americans—thus separating beneficiaries from those excluded from benefits. This ruling (rather more controversial than this case – because dealing with ethnicity rather than financial prosperity) fully supports the City's separating out companies with wealthy ownership as being less in need of affirmative action assistance.

Plaintiffs' contention that women and those with atypical ethnic origins in Kansas City do sometimes suffer from status discrimination is of course commonly understood and is accepted as true, but it remains a legislative choice (not subject to strict scrutiny) to set outward bounds on relief. As defendants' brief notes, Oprah Winfrey would have no constitutional right to affirmative action benefits if there was a legislative decision (as here and in Slater) to exclude the wealthy.

But even if a compelling reason were required to exclude plaintiffs from coverage, they have not impeached or quarreled with the reason

suggested by the consultants. At this stage in the proceedings I again conclude the plaintiffs have very unlikely prospects of success on the merits. Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d, at 112-13. Perhaps the current prospects of ultimate success on the merits may still be termed quite modest or rather minimal, subject of course to further reconsideration before final judgment."

The principal current addition to this rationale is a reference to a footnote in a dissenting opinion of Justice Stevens in Fullilove v. Klutznick, 448 U.S. 448 (1980). That case involved a 10% set-aside for minority business enterprises. Rejecting argument that the set-aside was overly-inclusive, and violated constitutional rights of non-minorities, the Court majority sustained the program in reasoning that has since been modified. What is pertinent in Fullilove is that one of the dissenters, Justice Stevens, cited the wealth of several of the minority owners to suggest that the program was legally overly-inclusive, helping minority members who were less needy. Id. at 543-4 and footnote 16, listing one firm with "just under a half a million dollars" and another with "$1.3 million". Thus, the program included "firms that have no credit problem," according to Justice Stevens (referring to dollar values in 1980). Implicit in his comment was the need for a dollar cap on eligibility of minorities, as recommended in

2016 by the consultants here, and validated by the district judge and on appeal in the <u>Slater</u> litigation in Colorado, *supra*. Plaintiffs' argument that drawing a wealth line to split a minority group is a violation of their constitutional rights is thus further rebutted by Justice Stevens in Fullilove.

An example from a number of cases noting the use of a net worth limitation as a defense to a claim that minority groups were receiving undue favoritism is <u>Northern Contracting, Inc. v. State of Illinois</u>, 2004 WL 422704, *37, *39, *45 (N.D.Ill.). Implicitly this reasoning also helps defeat a claim that the net worth limitation violates the rights of the well-to-do to being included in affirmative action programs.

I conclude that the basic legal mistake of plaintiffs in this litigation is their failure to distinguish between the very sensitive issues that are raised where there is line-drawing that includes or excludes group rights on the basis of sex, race or ethnicity and the very different, quite routine issues, generally left to political or administrative discretion, where there is line-drawing within the same protected group on economic or similar grounds. Splitting the group is very different from creating the boundary line of a racial, gender or ethnic group. The boundary line is the area of utmost legal sensitivity. That is not this case.

For the reasons stated the motion to dismiss the first amended complaint (Doc. 37) is hereby GRANTED, with Count III dismissed without prejudice to litigation of State Court issues elsewhere.

 /s/ Howard F. Sachs

HOWARD F. SACHS

UNITED STATES DISTRICT JUDGE

June 16, 2021

Kansas City, Missouri